Nos. 22-4056, 22-4061

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

M.S., L.S., and C.J.S.,
Plaintiffs-Appellees,

v.

PREMERA BLUE CROSS,
Defendant-Appellant,

and

MICROSOFT CORPORATION, et al.,
Defendants.

_____

M.S., L.S., and C.J.S.,
Plaintiffs-Appellees,

v.

MICROSOFT CORPORATION, et al.,
Defendant-Appellant,

and

PREMERA BLUE CROSS,
Defendant.

_____

On appeal from the United States District Court for the
District of Utah, Case No. 2:19-cv-00199
The Honorable Robert J. Shelby

_____

**BRIEF OF APPELLEES**
***ORAL ARGUMENT REQUESTED***

_____

Brian S. King, Utah Bar No. 4610
Tera J. Peterson, Utah Bar. No. 12204
BRIAN S. KING P.C.
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: 801-532-1739
Facsimile: 801-532-1936
brian@briansking.com

*Counsel for Appellees* M.S. et al.

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………ii

TABLE OF AUTHORITIES …………………………………………………..iii

STATEMENT OF PRIOR OR RELATED APPEALS …………………………..vi

GLOSSARY…………………………………………………………………vi

INTRODUCTION………………………………………………………………1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ………………………2

STATEMENT OF THE CASE …..…………………………………………...4

SUMMARY OF THE ARGUMENT …………………………………………14

ARGUMENT ……………………………………………………………..16

    I.    THE DISTRICT COURT CORRECTLY RULED THAT PREMERA VIOLATED MHPAEA …………....................................................16

        A.    The District Court Correctly Determined that Inpatient Hospice Care Is an Analogue of Mental Health Treatment for Purposes of Parity Analysis…………………………………………………16

            1.  Inpatient hospice and residential treatment are analogues because they are in the same classification………………17

            2.  Inpatient hospice is an analogue of residential treatment not because of a similarity in symptomology, but because they both are inpatient care with a similar intensity of services..21

            3.  Inpatient hospice is an analogue of residential treatment not because of a similarity in symptomology, but because they both are inpatient care with a similar intensity of services..23

            4.  The district court's decision correctly interpreted ERISA's implementing regulation…………………………………..24

i

B.  The Plan's Requirements for Inpatient Hospice Care Are Not More Stringent than the InterQual Criteria for Residential Treatment…………………………………….......................26

II.  THE DISTRICT COURT CORRECTLY AWARDED PLAINTIFFS STATUTORY PENALTIES …………………………………….........28

A.  ERISA's Regulations Required Defendants to Produce Administrative Service Agreements to Plaintiffs Upon Written Request……………..................................................................28

B.  ERISA's Regulations Required Defendants to Produce the InterQual Criteria for Skilled Nursing Facilities and Inpatient Rehabilitation Services to Plaintiffs Upon Written Request…30

III.  THIS COURT SHOULD NOT ADDRESS DEFENDANTS' ARGUMENT THAT THE DISTRICT COURT ERRONEOUSLY AWARDED PLAINTIFFS THEIR FEES AND COSTS BECAUSE DEFENDANTS INVITED THE ERROR, IF ANY, AND DEFENDANTS DID NOT PRESERVE THE ARGUMENT BELOW; IN ANY EVENT, THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION…………………………………………33

CONCLUSION ……………………………………………………………..42

STATEMENT REGARDING THE NEED FOR ORAL ARGUMENT...………..43

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ………………………44

CERTIFICATE OF DIGITAL SUBMISSION …………………………………..45

CERTIFICATE OF SERVICE …………………………………………………...45

# TABLE OF AUTHORITIES

## Cases

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)……………………………………………………..21

*B.D. v. Blue Cross Blue Shield of Georgia*,
2018 WL 671213 (D. Utah Jan. 31, 2018)…………………………………25

*Bridger Coal Co./Pacific Minerals, Inc. v. Director, Office of Workers'
Compensation Programs, U.S. Dep't of Labor*,
927 F.2d 1150 (10th Cir. 1991)…………………………………………….33

*Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212 (10th Cir. 2000)………………..34

*ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735 (10th Cir. 2011)……………36

*Cummings v. Norton*, 393 F.3d 1186 (10th Cir. 2005)………………………..37-38

*David P. v. United Healthcare Ins. Co.*,
2020 WL 607620 (D. Utah Feb. 7, 2020)………………………………25-26

*David S. v. United Healthcare Ins. Co.*,
2020 WL 5821203 (D. Utah Sept. 30, 2020)………………………………25

*DeBoard v. Sunshine Mining & Refining Company*,
208 F.3d 1228 (10th Cir. 2000)………………………………...13, 35, 40, 42

*D.K. v. United Behavioral Health*,
2020 U.S. Dist. LEXIS 130545 (D. Utah 2020)……………………20, 40-41

*F.D.I.C. v. Noel*, 177 F.3d 911 (10th Cir. 1999)…………………………………….37

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)…………………..39

*Jonathan Z. v. Oxford Health Plans*, 2020 U.S. Dist. LEXIS 21968,
2020 WL 607896 (D. Utah Feb. 7, 2020)……………………………..20, 25

*Michael W. v. United Behav. Health*,
    420 F. Supp. 3d 1207 (D. Utah 2019)………………………9, 19, 20, 22, 25

*Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009)………12, 29-30

*Moothart v. Bell*, 21 F.3d 1499 (10th Cir. 1994)……………………………...11, 31

*Puckett v. United States*, 556 U.S. 129 (2009)………………………………...38-39

*Ray v. UNUM Life Insurance Company of America*,
    224 Fed. App'x. 772 (10th Cir. 2007)……………………………………...40

*Ruckleshaus v. Sierra Club*, 463 U.S. 680 (1983)…………………………..34-35

*Salemi v. Colo. Pub. Emples. Ret. Ass'n*,
    747 Fed. App'x. 675 (10th Cir. 2018)……………………………………..38

*Singleton v. Wulff*, 428 U.S. 106 (1976)……………………………………….37

*Slavin v. Garrison Prop. & Cas. Ins. Co.*,
    805 Fed. App'x. 561 (10th Cir. 2020)…………………………………….36, 37

*Sundance Assocs. v. Reno*, 139 F.3d 804 (10th Cir. 1998)………………………..33

*Timothy D. v. Aetna Health & Life Ins. Co.*, 2019 U.S. Dist. LEXIS 100388,
    2019 WL 2493449 (D. Utah June 14, 2019)…………………………...20, 21

*Travelers Indem. Co. v. Accurate Autobody, Inc.*,
    340 F.3d 1118 (10th Cir. 2003)……………………………………………34

*United States v. Butler*, 297 U.S. 1 (1936)…………………………………..33

*United States v. Burson,* 952 F.2d 1196 (10th Cir. 1991)………………………...36

*United States v. Jereb*, 882 F.3d 1325 (10th Cir. 2018)…………………………36

*United States v. Olano*, 507 U.S. at 725 (1993)………………………………..38

*United States v. Turrietta*, 696 F.3d 972 (10th Cir. 2012)………………………..39

iv

*Yakus v. United States*, 321 U.S. 414 (1944)…………………………………………38

**Statutes**

29 U.S.C. § 1024(b)(4)……………………………………………………………..12, 29

29 U.S.C. § 1132(a)(1)(B)…………………………………………………………..7, 35

29 U.S.C. § 1132(a)(1)(A) & (C)...…………………………………………………...7

29 U.S.C. § 1132(g)…………………………………………………………………..12, 39

29 U.S.C. § 1185a(a)(3)(a)…………………………………………………………..21

**Other Authorities**

10th Cir. R. App. P. 10.4………………………………………………………………34

10th Cir. R. App. P. 28.1……………………………………………………………..4

10th Cir. R. App. P. 30.1………………………………………………………............34

10th Cir. R. App. P. 30.2…………………………………………………….........4, 34

29 C.F.R. § 2590.712(c)(2)…………………………………………………………..17

29 C.F.R. § 2590.712(d)(3)………………………………………………………11, 28, 31

78 Fed. Register no. 209, p. 68246……………………………17, 18, 19-20, 24, 25

78 Fed. Register no. 219, p. 68241…………………………………………………17

Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and
    Addiction Equity Act of 2008; Technical Amendment to External Review
    for Multi-State Plan Program, 78 Fed. Reg. 68247 (Nov. 13, 2013)…...18-19

## STATEMENT OF PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## GLOSSARY

ERISA:          Employee Retirement Income Security Act of 1974

MHPAEA          Mental Health Parity and Addiction Equity Act

## INTRODUCTION

Since he was a young child, C.J.S. ("C.S.") struggled with social isolation, technology addiction, threats of suicide and self-harm, and violent outbursts. As he became a teen, C.S.'s violent outbursts became so severe that his parents M.S. and L.S. required assistance from the police. Eventually, after consultation with C.S.'s treating professionals, C.S.'s parents placed him in a residential treatment center where he could receive necessary mental health treatment.

Defendants, however, denied C.S.'s claim for insurance benefits, stating that C.S.'s treatment was not medically necessary under the terms of the family's insurance plan and under the criteria Defendants used to determine medical necessity.

C.S.'s parents internally appealed Defendants' denial of benefits. In their appeal, they requested the criteria that Defendants used to determine C.S.'s claim as well as the criteria Defendants use to determine claims for skilled nursing and inpatient rehabilitation facilities. Plaintiffs also requested any administrative service agreements between the Defendants.

Defendants upheld their denial. They never provided Plaintiffs with a copy of their administrative service agreement. And although Defendants eventually provided Plaintiffs with their criteria for skilled nursing and inpatient rehabilitation

facilities, they did not provide them until a year and a half after C.S.'s parents' first written request.

Plaintiffs brought suit against Defendants to recover the benefits due to them under the plan, for violating the Mental Health Parity and Addiction Equity Act ("MHPAEA"), and for statutory penalties for Defendants not providing the documents Plaintiffs requested within the statutory period of thirty days.

The district court ruled that Defendants violated MHPAEA and awarded penalties to Plaintiffs on their statutory penalties claim. The district court also awarded Plaintiffs their attorneys' fees and costs.

This Court should affirm. First, the district court correctly applied MHPAEA and its implementing regulations. Second, the district court correctly determined that Defendants were required to disclose their criteria for skilled nursing and inpatient rehabilitation facilities as well as their administrative service agreement to Plaintiffs upon Plaintiffs' written request. And third, the district court did not abuse its discretion awarding Plaintiffs their attorneys' fees and costs because the award was reasonable and Defendants represented to the court that they did not oppose Plaintiffs' request.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

**Issue 1**: The district court ruled that Defendants violated the Mental Health Parity and Addiction Equity Act ("MHPAEA") by applying more stringent

treatment limitations to claims for residential mental health treatment than it did for medical treatment in the same classification, which the court determined to be inpatient hospice care.

Did the district court correctly rule that inpatient hospice care was analogous to residential mental health treatment for purposes of parity analysis under MHPAEA?

**Issue 2**: The district court ruled that Plaintiffs were entitled to statutory penalties because Defendants did not provide Plaintiffs with copies of its criteria for skilled nursing and inpatient rehabilitation facilities or the administrative service agreement between Defendant Premera Blue Cross and Defendant Microsoft Corporation within thirty days after Plaintiffs requested them in writing.

Did the district court correctly rule that the Administrative Services Agreement and the criteria for skilled nursing and inpatient rehabilitation facilities were subject to disclosure?

**Issue 3**: Plaintiffs moved for attorneys' fees and costs. Defendants filed a response stating that they did not oppose Plaintiffs' request.

Did the district court erroneously award Plaintiffs attorneys' fees and costs after Defendants represented that they did not oppose it?

## STATEMENT OF THE CASE[1]

When C.S. started kindergarten, he began exhibiting violent and aggressive behavior. App. Vol. 1 at 142, 214. After several evaluations, C.S. was diagnosed with anxiety, emotional issues, and a pervasive developmental disorder. App. Vol. 1 at 54, 146, 214. C.S. began receiving ongoing behavioral, social, occupational, and language therapy. App. Vol. 1 at 145, 214.

But C.S. continued to struggle. By the time he reached his teens, C.S. was socially isolated and addicted to electronics, the internet, and technology. App. Vol. 1 at 54, 150, 214. C.S. also displayed aggressive and violent behavior towards his parents when they attempted to set limits on his technology use. App. Vol. 1 at 54, 150, 214. C.S. also sometimes threatened self-harm or suicide during his outbursts. App. Vol. 1 at 156, 214. C.S.'s violent behavior was severe enough that C.S.'s parents sought local police assistance and C.S.'s therapist implemented a "Safety Intervention Plan" to help keep C.S.'s family safe. App. Vol. 1 at 151, 214.

---

[1] Plaintiffs have contemporaneously filed a supplemental appendix under rule 30.2, Tenth Circuit Rules of Appellate Procedure. *See* 10th Cir. R. 30.2(A)(1) (providing that if the appellee "believes that the appellant's appendix omits items that should be included" in the appendix, it "may file a supplemental appendix with the answer brief"). Plaintiffs' supplemental appendix contains one volume.

Plaintiffs cite to both Appellants' appendix and the Appellees' supplemental appendix by volume and page number, for example, App. Vol. 1 at 27, or Supp. App. Vol. 1 at 49. *See* 10th Cir. R. App. P. 28.1(A)(1).

Because of C.S.'s continuing violence and aggression, his parents found it "extremely difficult" to enforce boundaries and rules. App. Vol. 1 at 157, 214. After consultation, C.S.'s parents eventually sent him to Daniels Academy to receive residential mental health treatment. App. Vol. 1 at 25, 58, 215.

### The Family's Insurance Plan

C.S.'s father M.S. was employed by Microsoft Corporation ("Microsoft"), which provided the family with group health coverage through the Microsoft Corporation Welfare Plan ("the Plan"). App. Vol. 1 at 24,54. C.S. was a beneficiary of the Plan. App. Vol. 1 at 24, 54. The Plan designates Microsoft as the Named Fiduciary and Plan Administrator. App. Vol. 1 at 23, 69. Pursuant to the Plan documents, Microsoft delegated its claim procedure duties to the claim administrator, Premera Blue Cross ("Premera"). App. Vol. 1 at 21-22, 70.

The Plan requires mental health treatment to be "medically necessary" to be a covered benefit. App. Vol. 1 at 211. Premera uses the McKesson InterQual ("InterQual") criteria to determine whether residential treatment is medically necessary. App. Vol. 1 at 212. Premera also uses separate InterQual criteria to determine whether services at skilled nursing facilities and inpatient rehabilitation facilities are medically necessary. App. Vol. 1 at 213. Premera does not use any criteria beyond the language of the Plan to determine whether inpatient hospice services are medically necessary. *Id*.

**Premera's Denial of Benefits and Plaintiffs' Appeals**

C.S.'s parents submitted a pre-authorization request to Defendants, seeking coverage for C.S.'s treatment at Daniels Academy. App. Vol. 1 at 62-63, 218. Premera denied the request, however, stating that C.S.'s treatment at Daniels Academy was not medically necessary. App. Vol. 1 at 170-171, 218.

C.S.'s parents appealed Premera's denial. App. Vol. 1 at 220. They asserted that C.S.'s care at Daniels Academy was medically necessary and they included several supporting letters from C.S.'s treating professionals. App. Vol. 1 at 220-221. C.S.'s parents also requested that Defendants provide them with "a copy of all documents under which the plain is operated," including (1) "all governing plan documents"; (2) "the summary plan description"; (3) "any insurance policies in place for the benefits [they] are seeking"; (4) "any administrative services agreements that exist"; and (5) "any mental health and substance use disorder treatment criteria (including skilled nursing facility and rehab criteria) utilized to evaluate the claim." App. Vol. 1 at 147, 222. In response, Premera sent C.S.'s parents only the Summary Plan Description, and the InterQual Criteria for Child and Adolescent Psychiatric Care at a Residential Treatment Center. App. Vol. 1 at 147, 222. Defendants did not send the InterQual criteria Defendants used for skilled nursing and inpatient rehabilitation facilities or an administrative services agreement.

Four months later, C.S.'s parents requested again the InterQual criteria for skilled nursing and inpatient rehabilitation facilities as well as the administrative services agreement. App. Vol. 1 at 149, 214. Defendants eventually provided the InterQual criteria for skilled nursing and inpatient rehabilitation facilities, but not until a year and a half after C.S.'s parents' initial request, and only after C.S.'s parents filed a complaint in federal court and sought them through discovery. App. Vol. 1 at 147, 222, 260. Even then, Defendants fought against producing them. App. Vol. 1 at 260 (recounting Defendants' "reluctance to disclose the InterQual Criteria during the claims processing administrative procedure and further resist[ance] … during discovery," including "Defendants' concerning reversal before the court about the existence of InterQual Criteria for inpatient rehabilitation facilities...."). Defendants never produced any administrative services agreements to Plaintiffs, including the agreement between Microsoft and Premera. App. Vol. 1 at 147, 222.

After exhausting their pre-litigation appeal obligations under ERISA and the Plan terms, C.S.'s family filed a complaint in the district court. App. Vol. 1 at 20-37. They raised three claims: (1) a claim for recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) a claim for a violation of the Mental Health Parity and Addiction Act; and (3) a claim for statutory penalties under 29 U.S.C. § 1132(a)(1)(A) and (C).

## The District Court's Decision

The district court decided the case on cross-motions for summary judgment. App. Vol. 1 at 58-92, 132-173. The district court granted Plaintiffs' motion for summary judgment on their MHPAEA and statutory penalties claims and granted Defendants' motion on Plaintiffs' ERISA claim. App. Vol. 1 at 210-266.

The district court first granted Defendants' motion on the ERISA claim. It ruled that Premera correctly determined that C.S.'s treatment at Daniels Academy was not medically necessary under the terms of the Plan and applying the InterQual criteria for residential treatment. App. Vol. 1 at 242.

The district court then granted summary judgment to Plaintiffs on their MHPAEA claim. The court ruled that Defendants violated MHPAEA by applying more stringent nonquantitative treatment limitations to claims for residential mental health treatment than it did for medical treatment of the same classification, which in this case, the court determined to be inpatient hospice care. App. Vol. 1 at 245-251. The district court explained that Defendants applied a more stringent nonquantitative treatment limitation on claims for residential mental health treatment benefits because in addition to the Plan's language, Defendants imposed the InterQual criteria to determine the medical necessity of residential mental health treatment benefits. App. Vol. 1 at 250. In contrast, the district court

explained, Defendants use only the Plan language to determine medical necessity for inpatient hospice care without applying any additional processes or criteria. *Id*.

The district court rejected Defendants' argument that inpatient hospice benefits are not analogous medical or surgical benefits within the same classification as residential treatment center benefits. App. Vol. 1 at 247-249. The district court acknowledged that the Final Rules implementing MHPAEA identify skilled nursing and inpatient rehabilitation facilities as "examples of analogous levels of care to residential treatment centers," but the district court explained that "as made clear" by the Final Rules' language, "these services are provided as examples of comparable benefits within a classification rather than an exhaustive list of comparable benefits." App. Vol. 1 at 248.

To determine the proper comparisons within the Rule's classifications, the court followed the "framework" used in the Utah federal district that "look[s] to the 'level of treatment' rather than the specific type of treatment provided at the facility." App. Vol. 1 at 248 (quoting *Michael W. v. United Behav. Health*, 420 F. Supp. 3d 1207, 1236 n. 13 (D. Utah 2019). Applying this framework, the district court concluded that inpatient hospice care was a proper comparison, or analogue, to residential treatment. App. Vol. 1 at 249.

The district court also rejected Defendants' argument that even if inpatient hospice benefits were analogous to residential treatment center benefits, the Plan's

9

language was just as stringent as the InterQual criteria for residential treatment centers. App. Vol. 1 at 249-50. Because claimants for residential treatment facilities had to satisfy the Plan's terms *plus* the InterQual criteria but inpatient hospice claimants had to satisfy only the Plan's terms, the district court concluded that Premera uses more restrictive treatment limitations for residential treatment than it does for inpatient hospice care. As the district court put it, "claimants seeking medical/surgical benefits for inpatient hospice care have one less hurdle to clear." App. Vol. 1 at 250.

The district court also granted summary judgment for Plaintiffs on their statutory penalties claim. It determined that because Defendants had not provided Plaintiffs with copies of the InterQual criteria for skilled nursing and inpatient rehabilitation facilities and the administrative service agreement between Premera and Microsoft within 30 days from Plaintiffs' written request, Defendants were liable for a penalty totaling $123,100. App. Vol. 1 at 264.

In making this determination, the district court rejected Defendants' contention that neither the InterQual criteria for skilled nursing and inpatient rehabilitation facilities nor the administrative service agreements between Premera and Microsoft were subject to disclosure. Relying on both the plain language and intent of the ERISA disclosure provision and its implementing regulations, the

10

district court concluded that both were required to be disclosed upon Plaintiffs'

written request.

The district court first determined that the InterQual criteria for skilled

nursing and inpatient rehabilitation facilities was "plainly within the scope" of

ERISA's disclosure provision because its implementing regulation clearly provides

that claims administrators must disclose "criteria for both medical/surgical benefits

and mental health and substance use disorder benefits, as well as the processes,

strategies, evidentiary standards, and other factors used to apply a nonquantitative

treatment limitation with respect to medical/surgical benefits and mental health or

substance use disorder benefits under the plan." App. Vol. 1 at 253 (quoting 29

C.F.R. § 2590.712(d)(3)).

The district court found that this conclusion was supported by the purpose of

ERISA's disclosure requirement, which was to put "'plan participants and

beneficiaries [] in a position to make informed decisions about how to best protect

their rights.'" App. Vol. 1 at 252 (quoting *Moothart v. Bell*, 21 F.3d 1499, 1503

(10th Cir. 1994).

The district court declined to follow the cases Defendants relied upon to argue

that Defendants were required to provide only the information they relied upon in

making an adverse benefit decision. App. Vol. 1 at 254. The court explained that the

cases Defendants cited predated an amendment to the regulation which made "clear

that evaluation criteria for analogous medical/surgical facilities, such as the InterQual Criteria for skilled nursing and inpatient rehabilitations facilities, are specifically within the scope of this provision." *Id*. (citing 29 C.F.R. § 2590.712(d)(3)).

The district court also determined that Defendants were obligated to disclose the administrative service agreement between Premera and Microsoft. App. Vol. 1 at 255-258. Noting that there was no controlling Tenth Circuit caselaw, the district court adopted the reasoning of the Seventh Circuit which requires disclosure of an administrative agreement where the administration of the plan is divided between entities. App. Vol. 1 at 256 (citing *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781 (7th Cir. 2009)). Because the administration of the plan was divided here with "Microsoft and Premera both hav[ing] obligations and responsibilities," the district court concluded that it was subject to disclosure. App. Vol. 1 at 258 (quoting 29 U.S.C. § 1024(b)(4)). The court noted that the agreement affected the rights of Plaintiffs because it controlled "where to send claims, which party … to request plan documents from, and other information necessary to make informed decisions under the Plan." App. Vol. 1 at 262.

After determining the merits of Plaintiffs' claims, the district court considered whether Plaintiffs were entitled to attorneys' fees and costs. Because Plaintiffs "achieved 'some degree of success on the merits'" in the case, the district court concluded that Plaintiffs may be entitled to attorneys' fees and costs. App.

Vol. 1 at 265 (quoting 29 U.S.C. § 1132(g)). The court, however, did not order attorneys' fees outright, but ordered the parties to brief whether Plaintiffs were entitled to fees and costs, and if so, how much. *Id*. In response, Plaintiffs submitted an eleven-page memorandum with eight declarations supporting their arguments. Supp. App. Vol. 1 at 39-103. In it, Plaintiffs argued that they were entitled to fees and costs, applying a five-factor test used in the Tenth Circuit. Supp. App. Vol. 1 at 42-45 (applying *DeBoard v. Sunshine Mining & Refining Company*, 208 F.3d 1228, 1244 (10th Cir. 2000)).

Defendants did not oppose Plaintiffs' motion or otherwise engage with Plaintiffs' arguments or reasoning. Rather, Defendants filed a half-page response that stated: "Defendants will not challenge Plaintiffs' recovery of an award of $69,240 in attorney fees and $400 in costs as requested in their Motion." Supp. App. Vol. 1 at 105. After briefing, the district court consequently ruled, "Considering Defendants' non-opposition, the court GRANTS Plaintiffs' Motion for $69,240 in attorneys' fees and $400 in costs." App. Vol. 2 at 296.

After supplemental briefing, the district further court ruled that Plaintiffs were not entitled to "any additional remedy" for Defendants' MHPAEA violation. App. Vol. 2 at 310.

Defendants now appeal.

## SUMMARY OF THE ARGUMENT

**Point I.** Defendants contend that the district court erroneously ruled that they violated MHPAEA. They argue that the district court incorrectly conducted MHPAEA's parity analysis by comparing inpatient hospice with residential treatment. According to Defendants, inpatient hospice is not analogous to residential treatment because MHPAEA's implementing regulations do not specifically identify inpatient hospice as an analogue of residential treatment and because the symptomology requiring care at the facilities are different.

Defendants are incorrect. Like many other courts, the district court correctly compared inpatient hospice with residential treatment. As MHPAEA's implementing regulations explain, when conducting parity analysis, the proper analysis looks to the level of treatment, not the type of care. Because inpatient hospice and residential treatment are both inpatient treatment with a similar intensity of services, they are analogous for purposes of MHPAEA analysis.

**Point II.** Defendants argue that the district court erroneously awarded Plaintiffs statutory penalties. They assert that they were not required to disclose to Plaintiffs their criteria for skilled nursing and inpatient rehabilitation facilities nor their administrative services agreement.

Defendants are wrong. The district court correctly determined that ERISA's regulations required Defendants to disclose both their criteria for skilled nursing and inpatient rehabilitation facilities and their administrative services agreement.

First, the administrative services agreement affects the rights and obligations of Plaintiffs and therefore was required to be disclosed under the plain language of ERISA's implementing regulations.

Second, ERISA's implementing regulations explicitly provide that Defendants must disclose "criteria for both medical/surgical benefits and mental health and substance use disorder benefits" to plan participants upon request.

**Point III.** Defendants also contend that the district court erroneously awarded Plaintiffs their attorneys' fees and costs. According to Defendants, Plaintiffs did not ultimately succeed because the district court did not award them a remedy for their MHPAEA cause of action.

This Court, however, should not address this argument. Defendants invited the error, if any, when they told the district court that they did not oppose Plaintiffs' request for fees and costs. Moreover, Defendants did not raise this argument below, so it is not preserved for this Court's review.

In any event, the district court did not abuse its discretion awarding attorneys' fees and costs to Plaintiffs because Plaintiffs achieved at least "some degree of success on the merits," which is all ERISA requires in order to award attorneys' fees and costs.

The Court should affirm.

## ARGUMENT

### I.    THE DISTRICT COURT CORRECTLY RULED THAT PREMERA VIOLATED MHPAEA

#### A.    The District Court Correctly Determined that Inpatient Hospice Care Is an Analogue of Mental Health Treatment for Purposes of Parity Analysis.

The district court ruled that Defendants violated MHPAEA by applying more stringent nonquantitative treatment limitations to claims for residential mental health treatment than it did for medical or surgical treatment of the same classification. App. Vol. 1 at 250. The district court compared inpatient hospice with residential treatment, concluding that they were analogues because they were in the same classification. *Id*.

On appeal, Defendants argue that the district court wrongly determined that inpatient hospice is analogous to residential treatment. Br.Aplt. 23. They contend that the district court erred for four reasons. First, they assert that MHPAEA's implementing regulations "do not identify hospice as an analogue." *Id.* at 24. Second, Defendants claim that residential treatment and hospice care are

"completely different." *Id.* at 27. Third, Defendants contend that the district court improperly shifted the burden of proof to them by requiring them to prove that inpatient hospice was not an analogous level of care. *Id*. at 28-31. And fourth, Defendants argue that "[e]xisting case law does not support the conclusion that inpatient hospice is analogous to residential treatment." *Id*. at 31 (emphasis removed). None of Defendants' arguments withstand scrutiny. The district court correctly determined that hospice care is analogous to residential treatment.

### 1. Inpatient hospice and residential treatment are analogues because they are in the same classification.

Defendants first assert that the district court erroneously concluded that inpatient hospice is an analogue of residential treatment because, they argue, MHPAEA's implementing regulations "do not identify hospice as an analogue" but do identify skilled nursing and inpatient rehabilitation services as analogues. Br.Aplt. 24 (citing Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008; Technical Amendment to External Review for Multi-State Plan Program, 78 Fed. Reg. 68247 (Nov. 13, 2013)). Defendants misunderstand the analysis required under MHPAEA to identify what are analogous levels of care for purposes of evaluating whether non-quantitative treatment limitations violate the statute.

MHPAEA's Interim Final Rules required that all benefits provided by medical plans be placed into one of six classifications: inpatient, in-network;

inpatient, out-of-network; outpatient in-network; outpatient, out-of-network;

emergency care; and prescription drugs. *See* 78 Fed. Register no. 219, p. 68241, fn.

4; 29 C.F.R. § 2590.712(c)(2)(ii)(A)(1)-(6). In collecting comments to prepare the

Final Rules, the Departments of Labor, Health and Human Services, and Treasury

struggled with how to deal with the "scope of services" for treatment that did not

fall neatly into one of the six categories. *See* 78 Fed. Register no. 209, p. 68246.

They referred to several different types of care, residential treatment among them,

as "intermediate" services along the continuum of care for mental health and

substance use disorders. The Departments specifically stated that they, "did not

intend that plans and issuers could exclude intermediate levels of care" from the

scope of MHPAEA:

> Although the interim final regulations did not define the scope of
> the six classifications of benefits, they directed that plans and
> issuers assign mental health and substance use disorder benefits
> and medical/surgical benefits to these classifications in a consistent
> manner. This general rule also applies to intermediate services
> provided under the plan or coverage. Plans and issuers must assign
> covered intermediate mental health and substance use disorder
> benefits to the existing six benefit classifications in the same way
> that they assign comparable intermediate medical/surgical benefits
> in these classifications. For example, if a plan or issuer classifies
> care in skilled nursing facilities or rehabilitation hospitals as
> inpatient benefits, then the plan or issuer must likewise treat any
> covered care in residential treatment facilities for mental health or
> substance use disorders as an inpatient benefit. In addition, if a
> plan or issuer treats home health care as an outpatient benefit, then
> any covered intensive outpatient mental health or substance use
> disorder services and partial hospitalization must be considered
> outpatient benefits as well.

78 Fed. Register no. 209, p. 68246-68247.

The question is thus how Defendants classify inpatient hospice. Because they classified care in inpatient hospice as inpatient benefits, they must likewise treat care in residential treatment facilities for mental health and substance use disorders as an inpatient benefit. *Id*.

Although Defendants complain that the Rule does not separately list inpatient hospice as an example of an analogue to residential treatment, the district court correctly observed that the language is a "non-exhaustive list of examples" of comparable benefits within a classification, App. Vol. 1. At 249, "rather than an exhaustive list of comparable benefits," *id*. at 248, as Defendants assert. Indeed, the Rule's language makes clear that in identifying the analogous levels of care between mental health/substance use disorders and medical/surgical treatment, the proper analysis "look[s] to the 'level of treatment.'" *Id.* (quoting *Michael W.*, 420 F. Supp. 3d at 1236 n. 13 (D. Utah 2019) (recognizing "the proper Parity Act analysis is not whether the 'exact type of care'" a claimant receives at a mental health facility is "the same [they] could have received at a medical/surgical facility; rather, it is whether [the administrator] uses less restrictive criteria for coverage for the analogous 'level of care' in a medical/surgical treatment facility than it did for mental health/substance abuse treatment."). Care falling somewhere

in the intermediate range on the continuum of care must be consistently and fairly compared and classified in one of those two categories.

Doing so is not a suggestion. The Rule provides that "plans and issuers assign mental health and substance use disorder benefits and medical/surgical benefits to these classifications" and that they do so in a "consistent manner." 78 Fed. Register no. 209, p. 68246-68247. Courts within the District of Utah have consequently ruled that "the appropriate comparison for identifying analogous levels of care between mental health/substance use disorders and medical/surgical treatment is not the type of care, but rather whether the care involved inpatient versus outpatient benefits" and "any care falling in the intermediate range between inpatient and outpatient should be compared regardless of the type of care." *D.K. v. United Behavioral Health*, 2020 U.S. Dist. LEXIS 130545 at *7-8 (D. Utah 2020). And based on that analysis, they have decided—like the district court did here—that inpatient hospice care is an appropriate comparison to residential treatment. *See id.*; *see also Jonathan Z. v. Oxford Health Plans*, 2020 U.S. Dist. LEXIS 21968, 2020 WL 607896, at *15 (D. Utah Feb. 7, 2020) (accepting inpatient hospice care as an analogous medical/surgical level of care for wilderness therapy and transitional living care); *Michael W.*, 420 F. Supp. 3d at 1236 n. 13 (agreeing that inpatient hospice care is analogous medical/surgical treatment "level of care" to mental health residential treatment facilities); *Timothy D. v. Aetna Health & Life*

*Ins. Co.*, No. 2:18CV753DAK, 2019 U.S. Dist. LEXIS 100388, 2019 WL 2493449, at *4 (D. Utah June 14, 2019) (unpublished) (same). The district court likewise correctly determined that inpatient hospice is an appropriate analogue to residential treatment here.

> **2. Inpatient hospice is an analogue of residential treatment not because of a similarity in symptomology, but because they both are inpatient care with a similar intensity of services.**

Second, Defendants assert that inpatient hospice and residential treatment should not be considered analogues as they are "completely different." Br.Aplt. 27. Because hospice care is "end-of-life care for the terminally-ill," *id*. at 25, and "residential treatment for adolescents is not end-of-life care," *id*. at 26, Defendants claim that they cannot be analogues.

As shown, however, a facility is considered an analogue for purposes of parity comparison not based on the similarity of symptoms for which care is provided, but based on the intensity of services and whether the care is inpatient or outpatient.

It goes without saying that the symptoms of patients in a medical or surgical facility will be different than those in a mental health facility. And that traditionally has been the reasoning for excluding benefits for mental health care and the disparity for which MHPAEA seeks to remedy. *See* 29 U.S.C. § 1185a(a)(3)(A); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352,

356 (2d Cir. 2016) (explaining that Congress enacted MHPAEA "to end

discrimination in the provision of insurance coverage for mental health and

substance use disorders as compared to coverage for medical and surgical

conditions in employer-sponsored group health plans"); *Timothy D. v. Aetna*

*Health & Life Ins. Co.*, 2019 U.S. Dist. LEXIS 100388, *9 (D. Utah June 14, 2019)

(explaining that MHPAEA "was enacted by Congress to end discrimination in how

ERISA plans provide health benefits for treatment of mental health and substance

abuse relative to benefits for medical and surgical conditions").

The fact that inpatient hospice care deals with end-of-life issues and

residential treatment facilities treat adolescents with mental health issues is of no

matter. As shown, the relevant comparison for purposes of the MHPAEA analysis

is that both involve treatment in an intermediate range between inpatient and

outpatient. As the district court explained, the proper analysis "look[s] to the 'level

of treatment' rather than the specific type of treatment provided at the facility."

App. Vol. 1 at 248 (quoting *Michael W.*, 420 F. Supp. 3d at 1236 n. 13

(recognizing "the proper Parity Act analysis is not whether the 'exact type of

care'" a claimant receives at a mental health facility is "the same [they] could have

received at a medical/surgical facility; rather, it is whether [the administrator] uses

less restrictive criteria for coverage for the analogous 'level of care' in a

medical/surgical treatment facility than it did for mental health/substance abuse

treatment."). The district court thus correctly determined that inpatient hospice care is a proper analogue to residential treatment here.

Defendants, however, theorize that "[i]f the district court's conclusion is allowed to stand, health plans may be required to place more restrictions on access to hospice, even if they have no reason to do so, and this will adversely affect hospice patients." Br.Aplt. 27. This is a curious argument.

The district court's decision recognizes that Defendants placed more restrictions on access to mental health care than it did on medical care such as inpatient hospice. This decision will not "require[]" Defendants to "place more restrictions on access to hospice," as Defendants complain. Br.Aplt. 27. Rather, it will require them to place *fewer* restrictions on mental health care, as MHPAEA requires. Defendants' compliance with MHPAEA is not discretionary. The district court correctly ruled that Defendants did not comply with the law and the Court should not disturb the district court's correct decision.

### 3. The district court did not shift the burden of proof to Defendants.

Defendants also contend that the district court improperly shifted the burden of proof to them by requiring them to prove that inpatient hospice was not an analogous level of care to residential treatment. Br.Aplt. 28-31. They claim that the district court's statement that "'Defendants offer no additional argument to explain why inpatient hospice benefits do not offer the same level of treatment as

residential treatment centers under the terms of the Plan'" required them to bear the burden of proof on Plaintiffs' MHPAEA claim. Br.Aplt. 29 (quoting App. Vol. 1 at 249). But the district court's statement did not.

While it is true that Plaintiffs carried the burden of proof on its MHPAEA claim, the district court correctly observed that the interpretation of MHPAEA is a question of law, for which Defendants' interpretation during the pre-litigation appeal process was owed no deference. App. Vol. 1 at 242-243.

In rejecting Defendants' argument that hospice care is not a proper analogue to residential treatment, the district court noted that Defendants did not "engage" with ERISA's implementing "framework" that required it to consider where benefits fit into ERISA's six classifications based on the intensity of services. App. Vol. 1 at 249; 78 Fed. Register no. 209, p. 68246-68247. Because Defendants did not address the controlling framework, the district court found their argument to be unpersuasive. App. Vol. 1 at 249. The district court did not shift the burden of persuasion, but correctly determined that under the controlling framework, inpatient hospice care is an analogue of residential treatment here.

**4. The district court's decision correctly interpreted ERISA's implementing regulation.**

Defendants also contend that the district court erroneously concluded that hospice care is an analogue of residential treatment because, according to them, "[e]xisting case law does not support the conclusion that inpatient hospice is

analogous to residential treatment." Br.Aplt. 31 (emphasis removed). Again, Defendants are mistaken.

Even if Defendants were correct that the cases the district court relied upon were inapposite, the district court still correctly ruled that inpatient hospice care is an analogue under ERISA's implementing regulations. The district court was bound to apply the plain language of these regulations, which as stated, provide that "Plans and issuers must assign covered intermediate mental health and substance use disorder benefits to the existing six benefit classifications in the same way that they assign comparable intermediate medical/surgical benefits in these classifications." 78 Fed. Register no. 209, p. 68246-68247. Thus, even if there were no cases on point to guide the district court's analysis—or if it relied on irrelevant cases—it still correctly determined that under ERISA's implementing regulations, inpatient hospice is an analogue of residential treatment.

But in any event, the cases the district court relied upon were not inapposite. Defendants complain that the cases the district court cited in its decision were not decided on the merits, but resolved other issues such as motions to dismiss or discovery disputes. *See* Br.Aplt. 31-32 (citing *B.D. v. Blue Cross Blue Shield of Georgia*, 2018 WL 671213, at *5 (D. Utah Jan. 31, 2018); *David S. v. United Healthcare Ins. Co*., 2020 WL 5821203 (D. Utah Sept. 30, 2020); *Jonathan Z.*, 2020 U.S. Dist. LEXIS 21968, 2020 WL 607896, at *15; *David P. v. United*

25

*Healthcare Ins. Co.*, 2020 WL 607620, at *19 (D. Utah Feb. 7, 2020); and *Michael*

*W.*, 420 F. Supp. 3d at 1236. But that circumstance does not undercut the cases'

persuasive authority. Like the district court here, those cases all similarly

concluded that for parity analysis under MHPAEA, inpatient hospice is an

analogue to residential treatment. *Id*. The district court did not err.

> **B.     The Plan's Requirements for Inpatient Hospice Care Are Not More Stringent than the InterQual Criteria for Residential Treatment.**

Defendants also argue that even if hospice care *is* an analogue of residential

treatment, they did not violate MHPAEA. Br.Aplt. 32-35. This is because, they

argue, the plan's requirements for hospice care are actually "more stringent" than

the InterQual criteria for residential treatment. *Id*. In support, they point to the

plan's requirements that a hospice care patient be "'terminally ill,'" that hospice

care be provided in a "'state licensed hospice or other hospice program that meets

the standards of the National Hospice and Palliative Care Organization,'" and that

hospice "'services must be part of a written treatment plan prescribed by a licensed

physician.'" *Id*. at 33 (quoting App. Vol. 1 at 108).

Defendants argue that these requirements are more stringent than the

InterQual criteria for residential treatment that require a patient seeking residential

treatment to be "suffering serious emotional or mental disturbance and receive at

least weekly evaluations from a psychiatrist to determine whether continued stay or

discharge is appropriate." *Id*. at 33-34 (citing App. Vol. 3 at 500). Defendants' argument fails.

As the district court noted, this argument is unpersuasive because "claimants seeking medical/surgical benefits for inpatient hospice care have one less hurdle to clear." App. Vol. 1 at 250. It does not follow that a claimant who is required to meet less requirements has more stringent requirements.

Defendants do not explain how the Plan's requirements that a hospice care patient be "terminally ill," care be provided in a "'state licensed hospice or other hospice program" or that hospice "'services must be part of a written treatment plan" are more "stringent" than the plan's requirements and the InterQual criteria for residential treatment. Indeed, although Defendants cite to a couple of InterQual's criteria for residential treatment, they do not address the remaining criteria that covers five single-spaced pages. *See* App. Vol. 3 at 498-502. Nor do Defendants address any of the plan's requirements for residential treatment.

The district court correctly determined that the treatment limitation Defendants applied to residential treatment was more restrictive than that it applied to analogous medical or surgical benefits covered by the plan. Defendants have not shown otherwise. The Court should affirm.

## II.  THE DISTRICT COURT CORRECTLY AWARDED PLAINTIFFS STATUTORY PENALTIES

Defendants next assert that the district court erroneously awarded statutory penalties for Premera's failure to produce the administrative service agreement and the InterQual criteria for skilled nursing and inpatient rehabilitation facilities to Plaintiffs. Br.Aplt. 35-50. Defendants agree that Premera did not provide the documents, but they contend that ERISA's regulations did not require the documents to be produced. As shown below, Defendants are incorrect. The district court correctly ruled that ERISA requires their disclosure.

### B.  ERISA's Regulations Required Defendants to Produce Administrative Service Agreements to Plaintiffs Upon Written Request.

Under 29 C.F.R. § 2590.712(d)(3), Defendants were required to provide Plaintiffs with "instruments under which the plan is established or operated" within 30 days of Plaintiffs requesting them. Those instruments included "information on medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits," as well as "the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan."

Defendants contend that Premera's administrative services agreement with Microsoft is not a plan document that it was required to produce to Plaintiffs.

Br.Aplt. 35-44. According to them, the agreement was not subject to disclosure because it "does not inform employees of their rights and obligations under the Plan…." *Id.* at 35. The district court, however, concluded otherwise.

The court observed that the administrative services agreement affected the rights of Plaintiffs because it controlled "where to send claims, which party … to request plan documents from, and other information necessary to make informed decisions under the Plan." App. Vol. 1 at 262.

Noting that there was no controlling Tenth Circuit caselaw, the district court adopted the reasoning of the Seventh Circuit which requires disclosure of an administrative services agreement where the administration of the plan is divided between entities, thereby affecting the rights and obligations of the plan's participants. App. Vol. 1 at 256 (citing *Mondry*, 557 F.3d 781). Because the administration of the plan was divided here with "Microsoft and Premera both hav[ing] obligations and responsibilities," the district court likewise concluded that the administrative services agreement affected Plaintiffs' rights and obligations and was subject to disclosure. App. Vol. 1 at 258 (quoting 29 U.S.C. § 1024(b)(4)).

Defendants object to the district court's reliance on *Mondry*. Br.Aplt. 42 They argue that *Mondry* does not apply because there, the administration of the plan was divided between the employer and a third-party administrator, whereas here, Premera is the only third-party administrator and Premera's role and

"unfettered authority" was "disclosed in the Summary Plan Description and other governing plan documents…." *Id.*

This objection, however, does not address the district court's reasoning. The district court found that the administrative services agreement affected Plaintiffs' rights and obligations, including "where to send claims, which party … to request plan documents from, and other information necessary to make informed decisions under the Plan." App. Vol. 1 at 262. The court thus found that it was "important for the Family to know where they stand in relation to the plan, where to send claims, which party they need to request plan documents from, and other information necessary to make informed decision under the Plan." App. Vol. 1 at 262. Because Defendants did address the district court's reasoning, they have not met their burden on appeal to demonstrate that the district court erred. The Court should affirm.

**B.     ERISA's Regulations Required Defendants to Produce the InterQual Criteria for Skilled Nursing Facilities and Inpatient Rehabilitation Services to Plaintiffs Upon Written Request.**

Defendants also argue that the district court erred when it concluded that the InterQual criteria for skilled nursing facilities and inpatient rehabilitation services were subject to disclosure. Br.Aplt. 44-50. They contend that they were required to produce only the criteria upon which Premera relied to decide Plaintiff's claim, and

30

because they did not rely on skilled nursing or inpatient rehabilitation criteria to make that determination, those criteria were not subject to disclosure. *Id.*

ERISA "requires plan administrators to provide information requested by beneficiaries at any time, and includes information beyond just that used during claims processing." App. Vol. 1 at 255 (citing 29 C.F.R. § 2590.712(d)(3)). As the district court noted, the purpose of ERISA's disclosure requirement is "'so that plan participants and beneficiaries would be in a position to make informed decisions about how to best protect their rights.'" App. Vol. 1 at 252 (quoting *Moothart*, 21 F.3d at 1503.

Yet Defendants take issue with the district court's reliance on ERISA's implementing regulation, which explicitly states that documents required to be disclosed includes "criteria for both medical/surgical benefits and mental health and substance use disorder benefits." 29 C.F.R. § 2590.712(d)(3). Defendants argue that the regulation does not apply because Premera did not cite or rely on them in its coverage determination and MHPAEA claims "are not at issue during the administrative phase…." Br.Aplt. 48.

This argument fails. The regulation says what it says. It requires disclosure. It states that "for plans subject to ERISA, instruments under which the plan is established or operated must generally be furnished to plan participants within 30 days of request." 29 CFR 2590.712(d)(3). It then explains that "[i]nstruments

under which the plan is established or operated *include* documents with information on *medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits*, as well as the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation *with respect to medical/surgical benefits* and mental health or substance use disorder benefits under the plan." *Id.* (emphasis added). The regulation further explains that claimants and their authorized representatives have the right "upon appeal of an adverse benefit determination (or a final internal adverse benefit determination) to be provided upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits" which "*includes* documents with information on *medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits*, as well as the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation *with respect to medical/surgical benefits* and mental health or substance use disorder benefits under the plan." *Id.* (emphasis added).

Indeed, not only is Defendant's interpretation contrary to the plain language of the regulation, but it also renders the regulation meaningless. For if the regulation does not apply to MHPAEA claims and as Defendants themselves acknowledge, there is another mechanism for obtaining the documents once a

lawsuit has been filed—discovery—then there is no need for the regulation to require claims administrators to provide claimants "upon request and free of charge" the "criteria for both medical/surgical benefits and mental health and substance use disorder benefits." Br.Aplt 48-49. This cannot be.

The Court "will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous." *Bridger Coal Co./Pacific Minerals, Inc. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 927 F.2d 1150, 1153 (10th Cir. 1991); *see also Sundance Assocs. v. Reno*, 139 F.3d 804, 810 (10th Cir. 1998) (same); *United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."). Because Defendants' interpretation is contrary to the plain language of the regulation and renders it meaningless, the Court should reject Defendants' argument.

Here, the district court correctly determined that the InterQual criteria for skilled nursing and inpatient rehabilitation were required to be disclosed to Plaintiffs. The Court should affirm.

**III.    THIS COURT SHOULD NOT ADDRESS DEFENDANTS' ARGUMENT THAT THE DISTRICT COURT ERRONEOUSLY AWARDED PLAINTIFFS THEIR FEES AND COSTS BECAUSE DEFENDANTS INVITED THE ERROR, IF ANY, AND DEFENDANTS DID NOT PRESERVE THE**

## ARGUMENT BELOW; IN ANY EVENT, THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION[2]

Finally, Defendants contend that the district court erred in awarding

attorneys' fees and costs to Plaintiffs. Br.Aplt. 51-53. In support, they argue that

Plaintiffs did not "ultimately succeed'" on their MHPAEA claim because it was a

---

[2] This Court may also decline to review this claim because Defendants failed to provide the necessary filings in its appendix. The Tenth Circuit Rules of Appellate Procedure require appellants to prepare an appendix that is sufficient for this Court's review. *See* 10th Cir. R. App. P. 30.1(B) (1) ("An appellant represented by retained counsel must electronically file an appendix sufficient for considering and deciding the issues on appeal."). Materials appellants are required to include in the appendix are the relevant pleadings below, any exhibits attached to those pleadings, and other materials the district court considered when making its decision. *See* 10th Cir. R. 10.4(D)(2) ("When the appeal is from an order disposing of a motion or other pleading, the motion, relevant portions of affidavits, depositions and other supporting documents … and any responses and replies filed in connection with that motion or pleading must be included in the record or appendix."). Defendants did not include in their appendix Plaintiffs' motion for attorneys' fees and its eight exhibits, or Defendants' response. This Court may consequently decline to review this claim. *See* 10th Cir. R. 10.4(B); *Travelers Indem. Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1121 (10th Cir. 2003) (holding that appellants' failure "to include in the appendix the document that controls the resolution of the issues on appeal … deprives them of the right to challenge the judgment of the district court."); *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1221-1222 (10th Cir. 2000) (declining to review district court's decision where appellant "has not included in the appellate record any of the motions filed by the parties").

If the Court, however, decides to review the claim, Appellees have concurrently filed a supplemental appendix that contains the materials Defendants should have included in their appendix. *See* 10th Cir. R. 30.2(A)(1) ("An appellee who believes that the appellant's appendix omits items that should be included may file a supplemental appendix with the answer brief."). Appellees' supplemental appendix contains, among other filings, Plaintiffs' motion for attorneys' fees, its eight exhibits, and Defendants' response.

"'purely procedural victor[y]'" and that the district court erroneously ruled that

Premera failed to produce plan documents as required by ERISA. Br.Aplt. 52

(quoting *Ruckleshaus v. Sierra Club*, 463 U.S. 680, 699 n.9 (1983)). Defendants'

argument fails. They invited the error, if any. They also did not preserve the

argument below. But, in any event, the district court did not abuse its discretion in

awarding Plaintiffs their fees and costs.

After the district court granted summary judgment on Plaintiffs' MHPAEA

and statutory penalty claims, the district court determined that Plaintiffs "achieved

'some degree of success on the merits'" of the case, possibly entitling them to their

attorneys' fees and costs. App. Vol. 1 at 265 (quoting 29 U.S.C. § 1132(g)). The

court did not order attorneys' fees outright, but ordered the parties to brief whether

Plaintiffs were entitled to fees and costs, and if so, how much. *Id*. In response,

Plaintiffs submitted an eleven-page memorandum supported by eight declarations.

Supp. App. Vol. 1 at 39-103. In it, Plaintiffs argued that they were entitled to fees

and costs, applying this Circuit's five-factor analysis. Supp. App. Vol. 1 at 42-45

(applying *DeBoard v. Sunshine Mining & Refining Company*, 208 F.3d 1228, 1244

(10th Cir. 2000)).

Defendants did not oppose Plaintiffs' motion or engage with Plaintiffs'

arguments or reasoning in any way. Rather, Defendants filed a half-page response

that stated: "Defendants will not challenge Plaintiffs' recovery of an award of

$69,240 in attorney fees and $400 in costs as requested in their Motion." Supp.

App. Vol. 1 at 105. After briefing, the district court consequently ruled,

"Considering Defendants' non-opposition, the court GRANTS Plaintiffs' Motion

for $69,240 in attorneys' fees and $400 in costs." App. Vol. 2 at 296.

Plaintiffs may not complain of this outcome because they invited the error, if

any. The "Invited Error Doctrine . . . prevents a party who induces an erroneous

ruling from being able to have it set aside on appeal." *United States v. Burson,* 952

F.2d 1196, 1203 (10th Cir. 1991); *see also ClearOne Commc'ns, Inc. v. Bowers*,

643 F.3d 735, 771 (10th Cir. 2011) ("The invited-error doctrine precludes a party

from arguing that the district court erred in adopting a proposition that the party

had urged the district court to adopt."). Invited error is thus "a form of waiver," as

it involves "the intentional relinquishment or abandonment of a known right."

*ClearOne Commc'ns, Inc.*, 643 F.3d at 771 (internal quotation marks omitted). If a

party waives an argument by inviting the putative error he complains of, appellate

review is not available. *See United States v. Jereb*, 882 F.3d 1325, 1335 (10th Cir.

2018); *Slavin v. Garrison Prop. & Cas. Ins. Co.*, 805 Fed. App'x. 561, 567 (10th

Cir. 2020) (unpublished) (same).

Here, Defendants "induce[d]" the error, if any. *Burson,* 952 F.2d at 1203.

Defendants represented to the district court that they did *not* "challenge" Plaintiffs'

request. Supp. App. Vol. 1 at 105 ("Defendants will not challenge Plaintiffs'

recovery of an award of $69,240 in attorney fees and $400 in costs as requested in their Motion."). The district court relied on Defendants' representation and awarded Plaintiffs their fees and costs: "Considering Defendants' non-opposition, the court GRANTS Plaintiffs' Motion for $69,240 in attorneys' fees ad $400 in costs." App. Vol. 2 at 296. Because Defendants invited the very error that they complain of now on appeal, "appellate review is not available." *Slavin*, 805 Fed. App'x. at 567.

But even if Defendants did not invite any error, they still did not preserve this argument below. "'A federal appellate court will not consider an issue not passed upon below.'" *F.D.I.C. v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999) (cleaned up) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976)). To properly raise an argument, a party must present the argument to the district court "with sufficient clarity and specificity." *Folks v. State Farm Mut. Auto. Ins. Co.*, 784 F.3d 730, 741 (10th Cir. 2015). "[V]ague, arguable references to a point in the district court proceedings do not preserve the issue on appeal . . . because such perfunctory presentation deprives the trial court of its opportunity to consider and rule on an issue in any detail." *Id.* (citation and internal quotation marks omitted). Furthermore, "[b]ecause of the importance of raising an issue below," this Court has "consistently turned down the argument that the raising of a related theory was sufficient to preserve an issue for appeal."

*Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005) (internal quotation

marks omitted); *see also Salemi v. Colo. Pub. Emples. Ret. Ass'n*, 747 Fed. App'x.

675, 687 (10th Cir. 2018) (same).

Here, Defendants had an opportunity to raise arguments in opposition to

Plaintiffs' motion for attorneys' fees and costs. While they filed a response, they

never argued that the court should not award fees and costs because—as they argue

now—Plaintiffs did not "ultimately succeed'" on their MHPAEA claim and the

district court erroneously ruled that Premera failed to produce plan documents as

required by ERISA. Br.Aplt. 52. This argument is consequently not preserved for

this Court's review.

True, Defendants stated in their response to Plaintiffs' motion for attorneys'

fees and costs that they "reserve their rights to appeal the underlying orders and

therefore on that basis to appeal the award of fees and costs or interest." Supp.

App. Vol. 1 at 105. But while parties may appeal a ruling, that does not relieve

them of their duty to timely raise arguments and objections in the district court. *See*

*United States v. Olano*, 507 U.S. at 725, 731 (1993) ("'No procedural principle is

more familiar to this Court than that a constitutional right,' or right of any sort,

'may be forfeited . . . by the failure to make timely assertion of the right before a

tribunal having jurisdiction to determine it.'") (quoting *Yakus v. United States*, 321

U.S. 414, 444 (1944)). This is so claimed errors can be resolved by the district

court before they affect the outcome of the trial. *See Puckett v. United States*, 556 U.S. 129, 134 (2009). "It also prevents a litigant from 'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *United States v. Turrietta*, 696 F.3d 972, 976, (10th Cir. 2012) (internal quotation marks omitted) (quoting *Puckett*, 556 U.S. at 134).

Defendants did not raise their arguments so that the district court had an opportunity to consider them. This Court consequently cannot review them now.

But in any event, even if Defendants had not invited any error or had they preserved their argument, the district court did not abuse its discretion in ordering Defendants to pay Plaintiffs' attorneys' fees and costs. ERISA permits a district court to order "reasonable attorney's fee and costs of action to either party" at the court's "discretion." 29 U.S.C. §1132(g)(1). As long as a party achieves "some degree of success on the merits," a court does not abuse its discretion. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).

In deciding whether to exercise its discretion and award fees, the Tenth Circuit has provided five non-exclusive factors that a district court should consider:

1. the degree of the offending party's culpability or bad faith;
2. the degree of the ability of the offending party to satisfy an award of attorney's fees;
3. whether or not an award of attorney's fees against the offending party would deter other persons acting under similar circumstances;
4. the amount of the benefit conferred on members of the plan as a whole; and

5.  the relative merits of the parties' positions.

*DeBoard*, 208 F.3d at 1244.

Applying those factors here, the award of attorney fees and costs is appropriate. First, Defendants were culpable. The district court ruled that Defendants both violated MHPAEA and withheld documents from Plaintiffs that Defendants were statutorily required to have provided.

Second, Defendants are in a position to pay the reasonable award of attorney fees and costs. Premera Blue Cross is one of the largest insurers in the country and the Microsoft Corporation Welfare Plan is funded by one of the largest corporations in the world.

Third, the award of fees and costs will deter other claims administrators acting under similar circumstances. When a claimant is successful in causing a court to declare that a defendant claims administrator has violated MHPAEA and to impose statutory penalties because defendants withheld documents they should have provided, an award of fees sends a strong message to insurers that payment of benefits for which insureds have contracted and paid and have reasonable expectations of receiving can have a deterrent effect on wayward ERISA plans and administrators. *See, e.g., Ray v. UNUM Life Insurance Company of America*, 224 Fed. App'x. 772, 788 (10th Cir. 2007) (stating that "an award of attorney fees should deter such conduct in the future"); *see also D.K. v. United Behavioral*

*Health*, 2021 U.S. Dist. LEXIS 170481 *5-6 ("the court believes that awarding attorney fees and costs will deter insurers and other benefit plans from violating ERISA and the terms of employee benefit plans under similar circumstances").

Conversely, not awarding attorney fees will make it clear to Defendants—and other claims administrators—that, even if a court finds they violated MHPAEA and their other statutory duties, they have little to fear (and the use of the funds during the prelitigation appeal and litigation to gain) by attempting to deny legitimate claims and seeing if they can get away with it. The award of fees and costs in this case will thus deter future illegal practices by similar defendants.

Fourth, the award of fees and costs will benefit other members of the plan. While Plaintiffs' claim was not brought on behalf of plan members other than the Plaintiffs, reminding defendants that violating MHPAEA and the ERISA statutes will cost something above and beyond the benefits themselves will have a beneficial effect. It increases the likelihood that future claimants—including from the plan—obtain their benefits in a timely way, and without having to resort to litigation.

As to the fifth factor, the Plaintiffs prevailed on two of their three causes of action. The relative merit of the parties' positions thus clearly weighs in Plaintiffs' favor.

In sum, *DeBoard*'s factors all weigh in favor of Plaintiffs. The district court consequently did not abuse its discretion awarding attorneys' fees and costs to Plaintiffs. The Court should affirm the district court's award of attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

/s/ Brian S. King
BRIAN S. KING P.C.
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: 801-532-1739
Facsimile: 801-532-1936
brian@briansking.com

*Counsel for Appellees*

**STATEMENT REGARDING THE NEED FOR ORAL ARGUMENT**

Pursuant to 10th Cir. R. 28.2(C)(2), the Appellants provide the following statement regarding their request for oral argument in the above captioned appeal.

Plaintiffs request the opportunity to present oral argument in support of their claim. This case involves questions of first impression for this circuit involving MHPAEA, including whether claimants are entitled to certain information upon request or whether they must file suit in federal court to obtain that information in discovery. The matter is of significant importance in light of the fact that several million individuals in the circuit receive employee welfare benefits. This Court's interpretation of MHPAEA and its regulations is important to these individuals.

DATED this 7th day of March, 2023.

/s/ *Brian S. King*
Brian S. King

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   [x] this brief contains 9,404 words, including the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

   [ ] this brief uses a monospaced typeface and contains ___ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [x] this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point New Times Roman, or

   [ ] this brief has been prepared in a monospaced typeface using [word processing program] with [characters per inch and type style].

Dated this 7th day of March, 2023.


                              /s/ *Brian S. King*
                              Brian S. King

44

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1.  all required privacy redactions have been made per 10th Cir. R. 25.5;

2.  if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

3.  the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, AVG which is updated on a daily basis, and according to the program are free of viruses.

    */s/ Brian S. King*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served to all parties registered to receive court notices via the Court's CM/ECF system.

At such time as the Court accepts the Appellees' filing, bound copies of the brief and appendices will be ordered and delivered to the Court and counsel for the Appellants.

Date: 3/7/23                                   */s/ Brian S. King*
                                               Brian S. King
                                               **BRIAN S. KING, PC**
                                               336 South 300 East, Suite 200
                                               Salt Lake City, UT 84111
                                               Telephone: (801) 532-1739
                                               Facsimile: (801) 532-1936
                                               brian@briansking.com